[Cite as *State v. Montgomery*, 2017-Ohio-567.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27222 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-455 |
| | : | |
| MARK MONTGOMERY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of February, 2017

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 West Second Street, Suite 603, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Mark Montgomery appeals from his conviction and sentence to four years in

prison for the offense of aggravated robbery (deadly weapon) in violation of R.C. 2911.01(A)(1), a first-degree felony. Montgomery's counsel filed a brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that the appeal is frivolous. By order filed November 10, 2016, we informed Montgomery that the *Anders* brief had been filed and advised him of his right to file his own brief and the time limit for doing so. Montgomery has not filed a pro se brief, and the time for filing has expired.

### The offense and course of proceedings

{¶ 2} The record includes the pre-sentence investigation report, which reveals the underlying incident that gave rise to Appellant's conviction. Montgomery and his girlfriend had been in a relationship for three years, and they were living with her father and her children in Dayton. On February 6, 2016, Montgomery, his girlfriend, his brother, and his brother's girlfriend went to a club in Cincinnati. Upon leaving the club early on February 7th, Montgomery and his girlfriend got into an argument after she would not let him drive home because she believed he was intoxicated. Montgomery knocked her to the ground and struck her. The local police were called, but no charges were pursued. The girlfriend then drove herself back to Dayton. Although Montgomery claimed he had made the payments on the vehicle, it was titled in his girlfriend's name and she had acquired it after it was repossessed from her ex-husband. Montgomery does not have a valid driver's license. Montgomery rode back to Dayton with his brother and his brother's girlfriend.

{¶ 3} When Montgomery's girlfriend arrived at her father's house, Montgomery and his brother were sitting in front. She went inside. Her father allowed Montgomery to enter. He went upstairs and came back down with a handgun. He knocked her to the floor, breaking the glass in an interior French door, and demanded the keys to the car. She

refused. He reached into her pocket and tore it open, removing the keys. One of her children also was present during the altercation. Montgomery threatened to shoot everyone and took her cell phone from her, after realizing she had called 911, and he left. A warrant was issued for his arrest.

{¶ 4} Several days later, Montgomery was arrested and the car was recovered. Montgomery admitted he took the keys out of his girlfriend's pocket after she refused to give them to him but stated he only kicked the French door out of frustration. He admitted he took the cell phone but claimed he picked it up when it fell out of her pocket, and he indicated he pays the phone bill so it belongs to him. He denied that he owned any real guns but did have a green and black airsoft handgun. When asked whether that was what he had in his hand when he demanded the car keys, Montgomery indicated he was done talking. Detectives also interviewed his brother, his brother's girlfriend, and the victim's father, all of whom advised that Montgomery had a handgun in his possession when he shoved his girlfriend to the floor.

{¶ 5} On March 8, 2016, Montgomery was indicted for aggravated robbery (deadly weapon) with an accompanying three-year firearm specification. At a court appearance on July 5, 2016, he agreed to plead guilty in exchange for dismissal of the firearm specification. There was no agreement with respect to sentencing. During the plea hearing, the trial court scrupulously complied with Crim.R. 11. In addition, Montgomery and his attorney signed a written plea form that included the plea agreement, the rights he was waiving, the applicable penalties, and post-release control. The court determined he understood the nature of the offense, the effect of his plea, and that it was made voluntarily. A presentence investigation report was ordered.

{¶ 6} On August 3, 2016, a sentencing hearing was held. The court indicated it had considered the presentence investigation, the sentencing memoranda filed by the defense and the prosecution, the purposes and principles of sentencing, and the seriousness and recidivism factors of the Revised Code. The court noted that aggravated robbery is a first-degree felony with a presumption that a prison term is the appropriate sentence. The court further determined that the presumption of a prison sentence was not overcome by the circumstances of the case. The court imposed a four-year prison sentence with five years of mandatory post-release control.

### Potential assignments of error

{¶ 7} Although appellate counsel found no merit to the appeal, he has identified two potential assignments of error for our consideration. The first potential assignment addresses whether the trial court complied with Crim.R. 11. We have reviewed a transcript of the plea and sentencing and the documents filed of record. As indicated, the trial court engaged in a complete Crim.R. 11 colloquy with the Appellant. There is absolutely nothing in the record from which one could fashion an argument that the plea was somehow deficient. We agree with counsel that an argument that the trial court failed to fully comply with Crim.R. 11 lacks arguable merit and is frivolous.

{¶ 8} Counsel's second potential assignment of error addresses whether the trial court sentenced the Appellant within statutory guidelines. Aggravated robbery with a deadly weapon under R.C. 2911.01(A)(1), the charge to which the Appellant pled, is a first-degree felony with a penalty range of any number of years from three to eleven in prison. R.C. 2929.13(D)(1) provides that when sentencing for a first or second degree

felony "it is presumed that a prison sentence is necessary in order to comply with the purposes and principles of sentencing." Nonetheless, R.C. 2929.13(D)(2) provides that "[n]otwithstanding the presumption * * * the sentencing court *may* impose a community control sanction," (emphasis added), but only if the sentencing court finds that a community control sanction would (1) adequately punish the offender and protect the public from future crime, and (2) not demean the seriousness of the offense because the statutory less serious sentencing factors outweigh the more serious factors. The trial court did not make those findings, which we conclude are discretionary. Even if it had substantial evidence to support such findings, and had made them, two districts have determined that "[a]s the plain statutory language indicates, the sentencing court is under no obligation to impose community control sanctions simply because the offender meets the eligibility requirements." *State v. Davis*, 8th Dist. Cuyahoga No.81170, 2002-Ohio-7068, ¶ 25; *State v. Redman*, 3d Dist. Allen No. 1-15-54, 2016-Ohio-860, ¶ 51, quoting *Davis*.

{¶ 9} Ultimately, we would be unable to consider the mechanics of the imposed sentence because a trial court has full discretion to impose any sentence within the authorized range. *State v. Nelson*, 2d Dist. Montgomery No. 25026, 2012-Ohio-5797, ¶ 62. Our review also would be limited. "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. We can conceive of no reasonable, potentially meritorious argument in the circumstances of this case that would support the Appellant's cause. Accordingly, the

second potential assignment is frivolous.

### *Anders* review

{¶ 10} We have conducted a thorough and complete examination of all the proceedings to decide whether this appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), citing *Anders* at 744. We have reviewed the docket, the various filings, the written transcript of the plea and sentencing hearings, the presentence investigation, and the sentencing entry. We have found no non-frivolous issues for review. Accordingly, the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . .

DONOVAN, J., and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
John S. Pinard
Mark Montgomery
Hon. Steven K. Dankof